UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOBLE CAPITAL LLC,

    *Plaintiff*,

v.

PEOPLE'S REPUBLIC OF CHINA,

    *Defendant*.

Civil Action No. 23-03139 (AHA)

**Memorandum Opinion**

Noble Capital LLC sues the People's Republic of China ("PRC"), alleging that it breached the terms of bonds issued from 1898 to 1913 by predecessor governments of China. The PRC moves to dismiss, asserting sovereign immunity, the statute of limitations, and other defenses. The Court agrees the PRC is entitled to sovereign immunity and dismisses the complaint.

**I.    Background**[1]

According to the complaint, Noble Capital is the assignee and lawful owner of sovereign bonds issued by the then-existing governments of China between 1898 and 1913. ECF No. 28 ¶ 7. The loan agreements for these historical bonds said they "shall have priority over all future loans secured by a charge on the specified future revenue" and "all future loans secured by a charge on the specified revenue shall be subject to the current loan." *Id.* ¶ 17. They also provided that "no future loan shall be raised that shall take precedence of or be on an equality with the current loan"

---

[1]    As required when evaluating a challenge to the legal sufficiency of a plaintiff's jurisdictional allegations, the Court accepts the complaint's well-pled allegations as true and draws all reasonable inferences in Noble Capital's favor. *See Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

and "no future charge shall lessen or impair the security of the current loan over the specified future revenue." *Id.* The then-existing government of China made payments on these historical bonds until 1939, when it defaulted and "thereafter remained in default." *Id.* ¶ 24. Despite being in default, the government reaffirmed its payment obligations in 1947. *Id.* ¶ 25. But after the PRC came into power as the successor government, it repudiated the historical bonds in 1953, then again in 1955, 1982, and 1983. *Id.* ¶¶ 26, 32–35.

Fast forward to nearly a century after the historical bonds were first repudiated. In 2020 and 2021, the PRC issued distinct, dollar-denominated bonds on the Hong Kong Exchange, which were sold to qualified institutional investors in the United States. *Id.* ¶ 38. These bonds are secured by the PRC and state that they are on equal footing with all unsecured debt issued by the PRC. *Id.* ¶ 40. The bonds do not reference the PRC's successor liability for the historical bonds. *Id.* ¶ 41. The 2020-21 bonds include a waiver of immunity for any action "arising out of or in connection with" them. *Id.* ¶ 43.

Noble Capital now sues, asserting that the PRC breached clauses of the 1898-1913 bonds giving them priority and precedence over future loans by issuing bonds in 2020 and 2021 that now have greater priority and precedence. *Id.* ¶¶ 64–68, 82–83, 99–100, 113–14, 130–31. Noble Capital seeks damages totaling over $11.5 billion based on the principal and interest owed on the historical bonds. *See* ECF No. 28-2 at 2. The PRC moves to dismiss for lack of subject-matter jurisdiction and failure to state a claim.

## II.  Discussion

The Foreign Sovereign Immunities Act ("FSIA") is "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). The FSIA "codifies a baseline principle of immunity for foreign states" and "then sets out exceptions to that principle." *Turkiye Halk Bankasi A.S. v. United States*,

598 U.S. 264, 272 (2023) (citing 28 U.S.C. §§ 1604–1607). "If no exception applies, a foreign sovereign's immunity under the FSIA is complete: The district court lacks subject matter jurisdiction over the plaintiff's case." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000).

A foreign state may challenge "the legal sufficiency of the plaintiff's jurisdictional allegations," in which case "the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Id.* at 40. The foreign state "bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity." *Id.*

Noble Capital premises jurisdiction on two of the FSIA's exceptions: commercial activity and waiver. ECF No. 28 ¶¶ 9–11. As discussed below, neither applies. The PRC is accordingly immune from suit under the FSIA.

**A. The Commercial-Activity Exception Does Not Apply.**

The commercial-activity exception applies to cases where "the action is based upon [1] a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).

Here, the dispute centers on whether the first clause applies—that is, whether the action is "based upon a commercial activity carried on in the United States by the foreign state." *Id.*[2] The

---

[2]   The complaint references the second clause as well. ECF No. 28 ¶ 11. However, in response to the PRC's argument that no clause applies, Noble Capital disputes only the first. ECF No. 35 at 13.

PRC says this case is based upon the nonpayment of interest and principal on the historical bonds that Noble Capital allegedly owns—bonds that were "issued and repudiated in China" and do not constitute commercial activity carried on in the United States. ECF No. 29-1 at 16. Noble Capital argues that its suit is based upon the PRC's 2020-2021 sales of bonds to U.S. investors because, according to the complaint, the sale of those bonds is what breached the priority and precedence clauses of the historical bonds. ECF No. 35 at 13.

To determine what an action is "based upon" a court must identify, well, "the particular conduct on which the [plaintiff's] action is 'based.'" *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 33 (2015) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 356 (1993)). Identifying the "basis" or "foundation" of a claim involves considering "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson*, 507 U.S. at 357. But it is not enough for an activity to merely "establish a single element of a claim." *Rosenkrantz v. Inter-Am. Dev. Bank*, 35 F.4th 854, 862 (D.C. Cir. 2022) (quoting *Sachs*, 577 U.S. at 34). Ultimately, "[w]hat matters is the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading." *Jam v. Int'l Fin. Corp.*, 3 F.4th 405, 409 (D.C. Cir. 2021) (quoting *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 169 (2017)). Said differently, the Court must "zero[] in on the core of their suit" and the "sovereign acts that actually injured" the plaintiff. *Sachs*, 577 U.S. at 35 (citing *Nelson*, 507 U.S. at 358).

Here, the gravamen of Noble Capital's suit—the act that actually injured them—is the nonpayment of interest and principal on the historical bonds. The injury, and the more than $11.5 billion in damages sought as relief in this case, stem from Noble Capital's ownership of the historical bonds; the terms and conditions upon which those historical bonds were issued, including the guarantee of priority and precedence; and the failure to pay the principal or interest

on the loans for nearly a century, including the PRC's continued repudiation of the loans. *See* ECF No. 28 ¶ 20 (alleging that the historical bonds "for which Noble Capital is the assignee and lawful owner, *that are the subject of this action*, are due and payable in an amount to be determined at trial, but not less than $11.5 billion") (emphasis added); *see also* ECF No. 28-2. To be sure, the issuance of new bonds in 2020 and 2021 is an element of Noble Capital's claims as pled—the complaint alleges that the issuance and terms of the new bonds breached the terms of the historical bonds. And the recent issuance is key to Noble Capital's theory that its claims are timely. *See* ECF No. 35 at 24. But the Supreme Court has cautioned against evasion of the FSIA based on "artful pleading." *Sachs*, 577 U.S. at 36 (citing *Nelson*, 507 U.S. at 363).

Indeed, as Noble Capital acknowledges, the 2020 and 2021 bond issuances would not have given rise to any action if the principal and interest on the historical bonds *had* been paid. *See* ECF No. 35 at 14 (recognizing that "if the PRC had paid" the historical bonds, the priority and precedence clauses alleged to have been breached "would no longer apply"). The gravamen of the suit is accordingly the failure to repay the historical bonds, not the issuance of the new bonds. *See Sachs*, 577 U.S. at 35–36 (rejecting that certain conduct in the U.S. was the gravamen in part because there was "nothing wrongful" about the conduct "standing alone"); *Jam*, 3 F.4th at 409 (same, where "there would have been nothing wrongful" about the U.S. conduct alleged).

The action is accordingly based upon Noble Capital's ownership of the historical bonds, their terms, and the PRC's failure to pay principal and interest on them. As Noble Capital does not appear to contest, the issuance of the historical bonds and failure to pay principal and interest on them were carried on in China, not the United States. The FSIA's commercial-activity exception therefore does not apply.

### B. The PRC Has Not Waived Sovereign Immunity.

Noble Capital argues that, in the alternative to the commercial-activity exception, the PRC is not entitled to sovereign immunity because it has explicitly waived such immunity. The FSIA states that its presumptive sovereign immunity does not apply where "the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). "A foreign state explicitly waives its sovereign immunity in a treaty or contract only if it 'clearly and unambiguously' agrees to suit." *Ivanenko v. Yanukovich*, 995 F.3d 232, 239 (D.C. Cir. 2021) (quoting *World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1162 (D.C. Cir. 2002)). Explicit waivers must be "narrowly construed 'in favor of the sovereign.'" *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 691 (D.C. Cir. 2022) (quoting *World Wide Mins.*, 296 F.3d at 1162). And the "touchstone of the waiver exception" is "that the foreign state . . . *intended* to waive its sovereign immunity." *Ivanenko*, 995 F.3d at 240 (emphasis in original) (quoting *Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999)).

According to Noble Capital, the PRC's issuance of new bonds in 2020 and 2021 explicitly waived sovereign immunity in this action because the terms of the new bonds stated that sovereign immunity would be waived for any action arising "in connection with" them. ECF No. 35 at 15; *see* ECF No. 28 ¶ 43. But this action does not arise "in connection with" the 2020 and 2021 bonds. Noble Capital's claims are all premised on breach of the terms of the historical bonds, not breach of the terms of any bonds issued in 2020 or 2021. And it would be difficult to conclude that an action based on the historical bonds arises "in connection with" the new bonds when, according to the complaint, the PRC repudiated the historical bonds nearly 70 years earlier, and multiple times thereafter. ECF No. 28 ¶¶ 32–35. The Court accordingly cannot conclude there is any intent to waive immunity as to breach of the terms of the historical bonds, let alone a clear and unambiguous intent to do so. *See Ivanenko*, 995 F.3d at 239; *see also World Wide Mins*, 296 F.3d at 1163

6

(reasoning that "the presence of waivers in" some agreements, but not others, "creates real ambiguity as to [the foreign sovereign's] intent"). Indeed, Noble Capital's briefing does not meaningfully contest these points.[3]

## III. Conclusion

For these reasons, the PRC is entitled to sovereign immunity. The Court accordingly lacks jurisdiction and does not reach the PRC's additional bases for dismissal. The PRC's motion to dismiss, ECF No. 29, is granted and the case is dismissed without prejudice. Noble Capital's motion for a hearing, ECF No. 37, is denied as moot. Noble Capital's motion for leave to file a surreply, ECF No. 39, is denied, and the PRC's motion to strike, ECF No. 41, is granted.

A separate order accompanies this memorandum opinion.

AMIR H. ALI
United States District Judge

Date: September 15, 2025

---

[3] The PRC also argues that any waiver of sovereign immunity in the terms of the bonds issued in 2020 and 2021 would be enforceable only by someone who owns those bonds, and Noble Capital does not allege it owns any. *See* ECF No. 29-1 at 25. Noble Capital failed to address this argument in its response brief and has accordingly conceded it. *See Mesumbe v. Howard Univ.*, 706 F. Supp. 2d 86, 96–97 (D.D.C. 2010) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." (quoting *Fox v. Am. Airlines, Inc.*, No. 02-cv-2069, 2003 WL 21854800, at *2 (D.D.C. Aug. 5, 2003))). Noble Capital subsequently moved to file a surreply addressing this issue; however, because the PRC clearly advanced this argument in its motion to dismiss, the Court denies the motion to file a surreply and grants the PRC's motion to strike. *See U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 238 F. Supp. 2d 270, 276 (D.D.C. 2002) ("A surreply may be filed only by leave of Court, and only to address new matters raised in a reply, to which a party would otherwise be unable to respond.").